In re Conrad Prentiss BURNETT, Jr., Debtor.

Crafted Homes, Inc., Movant

v.

Conrad Prentiss Burnett, Jr., Respondent.

No. 11–50057.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

April 28, 2011.

Conrad Prentiss Burnett, Jr., Boyce, VA, pro se.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

A hearing was held on April 20, 2011, to consider the Motion of Crafted Homes, Inc. for Relief from the Automatic Stay (hereafter the "Motion for Relief") and the Debtor's Objection to the Motion for Relief from the Automatic Stay. After considering the pleadings of the parties, the evidence presented, and the arguments of the parties the Court makes the following findings of fact and conclusions of law.

### Background

On April 10, 2006, the Debtor executed a Deed of Trust (hereafter the "Deed of Trust") naming Homestead Funding Corp. as the Lender, Laura H. Frank as the Trustee, and Mortgage Electronic Registration Systems, Inc. (hereafter "MERS")[1] as the beneficiary and nominee for the

Lender and the Lender's successors and assigns. The real property subject to the lien created by the Deed of Trust is located at 458 Lakeview Lane, Boyce, VA 22620 (hereafter the "Property").

The Deed of Trust states that MERS "is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." The Deed of Trust also states that the "Borrower (in this case Mr. Burnett) understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

The Debtor does not contest that he is in default under the terms of the note and the Deed of Trust. On May 5, 2009, MERS appointed Specialized Inc. of Virginia as substitute trustee. The instrument noting Specialized's appointment was recorded on May 29, 2009, in Clarke County.

On August 19, 2009, Specialized held a foreclosure sale on the Property. The Property was sold to Deutsche Bank Trust Company Americas as Trustee for RALI 2006QS5 (hereafter "Deutsche Bank"). The sale price was $144,535.35. The Substitute Trustee's Deed was dated August

---

1. In describing the MERS system, *In re Martinez,* 444 B.R. 192, 196 (Bankr.D.Kan.2011) states that "[t]he essence of MERS' business is to hold legal title to mortgages (or deeds of trust in non-judicial foreclosure states) as an agent for the lender and the lender's successors and assigns, with such capacity duly re-

corded in the appropriate county land records. MERS was created to eliminate the need for mortgage assignees to record assignments to protect their interests and to thereby facilitate the purchase and sale of mortgages in the secondary market."

19, 2009, and filed with the Clarke County Circuit Court on August 28, 2009.

On December 15, 2010, Deutsche Bank executed a Deed conveying the Property to the Movant for $149,900.00 (hereafter the "Crafted Homes Deed").

The Debtor filed his Chapter 11 petition on January 18, 2011.

The Movant filed this Motion for Relief in order that it may proceed to state court and evict the Debtor from the Property.

### Discussion

### Standing

### MERS has the Authority to Enforce the Deed of Trust

■ At the root of the Debtor's argument is the position that the only party entitled to enforce the Deed of Trust, and thereby foreclose on the Property, is the original Lender listed on the Deed of Trust, Homestead Funding Corporation. For the following reasons the Court finds that under the clear and unambiguous terms of the Deed of Trust, which the Debtor signed, MERS was authorized to commence foreclosure proceedings.

*Tapia v. U.S. Bank, N.A,* 718 F.Supp.2d 689 (E.D.Va.2010) addressed a factual scenario nearly identical to that in this case. With regard to the question of whether MERS has the authority to enforce a deed of trust and foreclose on a piece of real property the court held:

First, Plaintiffs argue that Defendants have no authority to enforce the terms of the First Deed of Trust because none of them are the Lender who, according to Plaintiffs, is the only party authorized to remove and appoint substitute trustees to foreclose on the Property. The Court finds this argument unavailing because the Deed of Trust authorized MERS to foreclose the Property in the event that Plaintiffs defaulted on the loan. The Deed of Trust states that "[t]he beneficiary of this Security In-

strument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (Deed of Trust 4.) The Deed of Trust also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument." (Deed of Trust 4.) Under the terms of the Deed of Trust, MERS has two roles: beneficiary and nominee for Lender. By signing the Deed of Trust, Plaintiffs agreed that MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could take any action required of Lender.

*Id.* at 696–97. In this case, the language of the Deed of Trust is identical to the language found in *Tapia.* The Court finds that under the clear and unambiguous terms of the Deed of Trust, MERS had the authority to commence foreclosure proceedings on the Property once the Debtor defaulted under the terms of the promissory note secured by the Deed of Trust.

### MERS has the Authority to Appoint a Substitute Trustee

■ Within its authority to commence foreclosure proceedings, MERS was authorized to appoint a substitute trustee. *Ruiz v. Samuel I. White, P.C., et al.,* No. 1:09–cv–688, 2009 WL 4823933, at *1 (E.D.Va. Dec.11, 2009) held that MERS, as the nominee, had the authority to appoint successor trustees under the plain terms of the deed of trust. Specifically, *Ruiz* found that under the deed of trust, "MERS (as nominee for Lender and Lender's succes-

sors and assigns) ha[d] the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." *Id.* at *2. *Ruiz* further held that "[t]he 'if necessary to comply with law or custom' language [in the deed of trust] does not ... require that the nominee have the power to act only when directed by law; rather, the nominee may act on behalf of the Lender as authorized by the deed of trust." *Id.* at *1.

In this case, the language in the Deed of Trust is identical to the language in *Ruiz.* Accordingly, the Court, pursuant to *Ruiz,* finds that MERS had the authority to appoint a substitute trustee.

In conclusion, the Court finds that MERS had the authority to enforce the Deed of Trust, and that under such authority MERS properly appointed Specialized as the substitute trustee. Accordingly, the Court finds that the August 19, 2009 foreclosure sale was valid.

### Deutsche Bank had Proper Title to the Property

Having determined that August 19, 2009 foreclosure sale was valid, the Court finds that Deutsche Bank, as the high bidder at the foreclosure sale, properly took title to the Property, as evidenced by the Substitute Trustee's Deed.

### Crafted Homes Inc. has Title to the Property

■ Since Deutsche Bank properly purchased the Property, the Court finds that Deutsche Bank was entitled to sell the Property to the Movant and thus, its conveyance to the Movant was valid. Therefore, the Court finds that the Movant is the current owner of the Property.

### As the Owner of the Property, Crafted Homes Inc. has Standing to Bring the Motion for Relief

■ In order to qualify as a party in interest such that a party has standing to bring a motion for relief from stay, *In re Ebersole,* 440 B.R. 690 (Bankr.W.D.Va. 2010) requires that the movant have a colorable claim. *In re Weisband,* 427 B.R. 13, 18 (Bankr.D.Ariz.2010) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) states that in order to establish a colorable claim, a movant for relief from stay must satisfy the "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. In order to satisfy the constitutional standing requirement the movant must have a 'personal stake' in the lawsuit [that] is sufficient to have a 'case or controversy' to which the federal judicial power may extend under Article III." *Id.* The question of whether a case or controversy exists is generally resolved by looking to see if the conflicting contentions of the parties represents a real, substantial controversy between parties having adverse legal interests, with a definite and concrete dispute, and not one which is hypothetical and abstract. *See* 1 Fed. Proc., L. Ed. § 1:14. *See also Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). In this case, the Movant and the Debtor have a real and substantive dispute. Movant is the owner of the Property and wishes to evict the Debtor. The Debtor seeks to resist eviction. Thus, the Movant has a case or controversy thereby satisfying the constitutional standing requirement.

■ In order to have prudential standing the movant must "assert its own claims rather than the claims of another." In this case, the Movant is asserting its right to possession as the property owner and satisfies the requirements of prudential standing. In conclusion, the Movant has both constitutional and prudential standing to bring the motion for relief. While *Weisband* focused its analysis on whether a note holder has standing, the

broader holding of *Weisband* is that where a party has constitutional and prudential standing it has a colorable claim such that it can bring a motion for relief. Furthermore, it does not matter how a party acquires such standing so long as it is present. Accordingly, the Court finds that the Movant, as the owner of the Property, has the standing required to bring the Motion for Relief.[2]

### The Property is Not Property of the Estate

 *In re Wolfe*, 344 B.R. 762, 767 (Bankr.W.D.Va.2006) holds that

> The bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Except for the rights of the bankruptcy trustee to enlarge the bankruptcy estate under 11 U.S.C. § 544, *et seq.*, the property interests which pass to the bankruptcy estate are no more extensive than those possessed by the debtor as of the date of filing. Filing bankruptcy cannot revest the debtor with property lost prepetition by foreclosure. *See* 5 *Collier on Bankruptcy* ¶ 541.04, at 54112 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In order to determine a debtor's interest in real property, the Court is to apply the law of the state in which the real property is located. *Butner v. U.S.*, 440 U.S. 48, 52–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Since the Property is located in the Commonwealth of Virginia, Virginia law applies.

*Rolen v. Southwest Virginia National Bank (In re Rolen)*, 39 B.R. 260, 264 (Bankr.W.D.Va.1983) holds that under Virginia law, "[i]n a [foreclosure] sale by a trustee under a Deed of Trust, the sale is complete when the trustee knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same." *In re Wolfe*, 344 B.R. 762, 768 (Bankr.W.D.Va.2006) (citing *Abdelhaq v. Pflug*, 82 B.R. 807, 810 (E.D.Va.1988)) expounds on *Rolen* and holds that "[o]nce an auctioneer's hammer falls and he signs a memorandum of sale, the Debtors no longer possess a legal or equitable interest in the property. At that point, the trustee under the Deed of Trust has legal titled to the property and the successful bidder possesses the right to enforce the sale in equity."

In this case, at the earliest, the Debtor lost his interest in the Property when the foreclosure hammer fell and a memorandum of the sale to Deutsche Bank was executed.[3] At the latest, the Debtor lost his interest when the Substitute Trustee's Deed to Deutsche Bank was recorded in Clarke County, Virginia on August 28, 2009. Thus, when the Debtor commenced his case by filing his petition on January 18, 2011, the Debtor no longer had an interest in the Property. With respect to real property the automatic stay only applies to property of the estate. Since the Debtor had no legal or equitable interest in the Property on January 18, 2011, the Court finds that the automatic stay provid-

---

**2.** It is also important to remember the cursory nature of motions for relief from stay. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir.1994) sets forth the nature of a motion for relief from stay review when it holds that "the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is anal-

ogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property."

**3.** The foreclosure sale took place on August 19, 2010. A signed Memorandum of Sale is not in evidence.

ed by 11 U.S.C. § 362(a) does not apply to the Property. Accordingly, it is

**ORDERED**

That Crafted Homes, Inc.'s Motion for Relief From Stay is hereby **GRANTED**.

Copies of this Decision and Order are directed to be sent to counsel for the Movant, William E. Shmidheiser, III, Esquire, and the Debtor, Conrad Prentiss Burnett Jr., 458 Lakeview Lane, Boyce, VA 22620.